IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

ELENA TERESA JONES,         *

                                *

      Plaintiff,         *

                                *      Civil No. TMD 14-1814

      v.                *

                                *

                                *

CAROLYN W. COLVIN,         *

Acting Commissioner of Social Security,   *

                                *

      Defendant.        *

                              ************

MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Elena Teresa Jones ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and

1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the

"Commissioner") denying her applications for disability insurance benefits ("DIB") and

Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 15), Defendant's

Motion for Summary Judgment (ECF No. 17), and Plaintiff's "Reply Brief" (ECF No. 18).[1]

Plaintiff contends that the administrative record does not contain substantial evidence to support

the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For

the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 17) is

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as
a procedural means to place the district court in position to fulfill its appellate function, not as a
device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards."
*Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary
judgment accompanied by a remand to the Commissioner results in a judgment under sentence
four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

**GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

# I

## Background

Plaintiff was born in 1967, has a high-school education, and previously worked as an attendance secretary and data entry clerk.  R. at 78, 272.   On February 14, 2011, Plaintiff protectively applied for DIB and SSI, alleging disability beginning on January 28, 2011, due to arthritis of the spine, a sciatic nerve, and asthma.  R. at 55, 237-54, 271.   The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 125-50, 161-74.   On August 28, 2012, ALJ Thomas Mercer Ray held a hearing at which Plaintiff and a vocational expert ("VE") testified.  R. at 72-105.   On November 29, 2012, the ALJ issued a decision finding Plaintiff not disabled from January 28, 2011, through the date of the decision.  R. at 52-71.   Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on April 2, 2014.  R. at 1-7, 38-45.   The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On June 6, 2014, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.   The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

The Court reviews the relevant portion of the evidence here and in Part VI below.

**A.      State Agency Medical Consultants**

On May 23, 2011, a state agency medical consultant, J. Biddison, M.D., assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 388-96.  Dr. Biddison opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of at least two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 389.  Plaintiff frequently could balance, and she occasionally could climb, stoop, kneel, crouch, and crawl.  R. at 390.  She had no manipulative, visual, communicative, or environmental limitations, however. R. at 391-92.

On October 13, 2011, another state agency consultant, W. Hakkarinen, M.D., also assessed Plaintiff's RFC.  R. at 134-36, 145-47.  Dr. Hakkarinen opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and  (4) perform unlimited pushing and/or pulling.  R. at 134, 145.  Plaintiff occasionally could climb, balance, stoop, kneel, crouch, and crawl.  R. at 134-35, 145-46. Because of Plaintiff's history of asthma, she was to avoid concentrated exposure to humidity, fumes and odors, and extreme heat and cold, but she had no manipulative, visual, or communicative limitations.  R. at 135, 146.

**B.      Brandon Soule, PA-C**

On June 5, 2012, Brandon Soule, a physician's assistant, assessed Plaintiff's pain and evaluated her physical capacities.  R. at 548-550.  In reviewing Mr. Soule's opinion, the ALJ stated in his decision:

> On June 5, 2012, Brandon Soule, PA-C, opined that [Plaintiff's] pain was "present to such an extent as to be distracting to adequate performance of daily activities of work," and that . . . she experienced pain "to such a degree as to cause distraction from tasks or total abandonment of task" [R. at 549].  However, he concluded that "some limitations may be present but not to such a degree as to create serious problems in most instances" [R. at 549].  He further opined that [Plaintiff] could lift or carry five pounds occasionally to one pound frequently during a normal work day, and that she did not require an assistive device to ambulate even minimally in a normal workday [R. at 550].  He believed that [Plaintiff] could never perform gross or fine manipulation, or be exposed to environmental problems or work around hazardous machinery [R. at 550].  He opined that [Plaintiff] could rarely bend or stoop, and could occasionally push or pull with the arms and/or legs, climb stairs or ladders, or balance [R. at 550].  He concluded that [Plaintiff] would likely be absent more than four days per month as a result of impairments or treatment [R. at 550].

R. at 65.

**C.      Hearing Testimony**

**1.      Plaintiff's Testimony**

In his decision, the ALJ reviewed Plaintiff's testimony:

> [Plaintiff] alleges disability due to degenerative disc disease, asthma, and obesity.  She states that these conditions result in pain, stiffness, numbness, weakness and muscle spasms in her lower back, legs and feet, as well as difficulty sitting, standing and walking for prolonged periods.
>
> At the hearing, [Plaintiff] testified that her pain starts in her lower back and radiates to her legs and feet, which causes her feet to swell.  She described the pain as severe, constant, and burning, and associated with numbness, weakness in her legs, and problems balancing.  She rated her average pain level as an eight or nine on a 10-point scale.  She said she lies down for relief, but must shift positions and get up and walk occasionally to avoid stiffness.  She indicated that she had tried injections, which helped "to a point," but provided only temporary relief.  She stated that she informed her doctor that her medications do not help relieve her pain and cause side effects such as difficulty concentrating and remembering,

constant drowsiness, and upset stomach.  She said she needs advanced treatment, but cannot afford a referral to a specialist because it is not covered by her insurance.

She further testified that, since January 2011, she has gained about 40 pounds due to inactivity caused by her back condition.  She said her doctors have placed her on a low-calorie diet, but have not recommended exercise because of the possibility of re-injuring her back.  She also mentioned that she was diagnosed with asthma in 2003, when she had an asthma attack at work, and was taken to the hospital.  She said she was prescribed a nebulizer and Albuterol to relieve wheezing, which is triggered by temperature changes, dust, pets, and smoke.  She admitted that she does not experience wheezing on a frequent basis.

In terms of her functional capabilities, [Plaintiff] testified that she is able to sit about 15-20 minutes before having to stand up and stretch; however, the undersigned observed that [Plaintiff] sat for approximately 30 minutes at the hearing before standing.  [Plaintiff] further testified that she was able to stand 20 minutes before having to walk around, walk 20 minutes before sitting, and lift or carry five pounds on a regular basis.  She said she had difficulty climbing stairs, bending, and reaching, and had used a prescribed cane every day since 2006 when getting up and sitting down.  She admitted that she did not use any other assistive devices.

As for her activities of daily living, [Plaintiff] stated that she has a driver's license, but does not drive.  She said she lives with her 29-year-old daughter and son-in-law, as well as her five-year-old granddaughter.  She denied taking independent care of her grandchild.  She said her daughter and son-in-law work and her granddaughter attends school all day, and that she spends her days by herself watching television and reading.  She stated that she was unable to watch two hours of television without falling asleep from her medications, and that she has difficulty remembering when reading.  She testified that her daughter does the household chores and grocery shopping, cooks, and helps her in and out of the shower.  She said she feels tired about two or three hours during the day, sleeps about an hour or two every day, and gets an average of two to three hours of sleep per night.

As for her work history, [Plaintiff] stated in a Work History report that she last worked as an attendance secretary from August 2004 to June 2006 [R. at 278].  She testified at the hearing that she has not worked or looked for work since January 28, 2011, the date she alleges she became disabled.  She stated that she receives food stamps, but has never received workers' compensation, unemployment, or private disability benefits.

R. at 60-61; *see* R. at 78-92, 101-02.

### 2.      VE Testimony

According to the VE, a hypothetical person with Plaintiff's same age, education, work experience, and the RFC as outlined in Part III below could perform the unskilled, sedentary[2] jobs of security worker, grading and sorting worker, or quality-control worker.  R. at 95-100.  No occupations would be available to an individual who needed to be absent on an unscheduled basis four times per month, however.  R. at 102.  Furthermore, no employment would be available to an individual who would be unpredictably off task and non-productive 20% of the time.  R. at 102-03.  The VE's testimony was consistent with the *Dictionary of Occupational Titles*.[3]  R. at 103.

## III

## Summary of ALJ's Decision

On November 29, 2012, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of January 28, 2011; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could

---

[2] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. §§ 404.1568(a), 416.968(a).  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  *Id.* §§ 404.1567(a), 416.967(a).

[3] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).   "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption."  *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

perform other work in the national economy, such as a security worker, grading/sorting worker, or quality-control worker.  R. at 58-66.  The ALJ accordingly found that she was not disabled from January 28, 2011, through the date of the decision.  R. at 66-67.

In so finding, the ALJ found at the third step of the sequential evaluation process that Plaintiff's

> spinal impairments do not meet or medically equal the requirements of listing 1.04: Disorders of the Spine.  To satisfy listing 1.04, the record must document, by medically acceptable imaging or examination, a disorder of the spine resulting in compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and positive straight-leg raising test sitting and supine; spinal arachnoiditis, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours; or lumbar spinal stenosis resulting in pseudoclaudication, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively.

> While radiological evidence has demonstrated signs of degenerative disc disease and neural foraminal narrowing in the lumbar spine, and physical examinations have been sporadically positive for sciatic pain, limited spinal range of motion, decreased lower extremity strength, and positive straight leg raising, the record does not consistently and repeatedly document the full symptomatic picture required by listing 1.04, as [Plaintiff] has not documented motor, sensory, or reflex loss and is able to ambulate effectively.  Therefore, listing 1.04 is not met or equaled.

R. at 58-59.

> The ALJ then found that Plaintiff had the RFC

> to perform less than the Full Range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).  She can occasionally climb ramps and/or stairs; never climb ladders, ropes and/or scaffolds; occasionally balance (refers to normal balancing not balancing as part of work criteria such as beam balancing); occasionally stoop, kneel, crouch, never crawl; may have occasional exposure to extreme cold and extreme heat, humidity, wetness, dusts, odors, fumes, and pulmonary irritants; and, she frequently needs a cane to stand, walk and balance.

R. at 59.  Regarding Plaintiff's credibility, the ALJ found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her]

statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  R. at 63.  The ALJ gave "little weight" to Mr. Soule's opinion because he

> is not a medical doctor or other acceptable medical source.  Further, his opinion is internally inconsistent and not supported by the medical evidence of record.  His assessment of the degree of [Plaintiff's] pain and the resulting limitations do not correlate, and his opinion as to [Plaintiff's] absences from work is a significant exaggeration.

R. at 65.

# IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at

379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production

and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct.

2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is

engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R.

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination

of impairments that significantly limits the claimant's physical or mental ability to do basic work

activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c),

404.1521(a), 416.920(c), 416.921(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the

medical severity of the impairment.  If the impairment meets or equals one of the presumptively

disabling impairments listed in the regulations, then the claimant is considered disabled,

regardless of age, education, and work experience.   20 C.F.R.  §§ 404.1520(a)(4)(iii),

404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the

presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to

determine the claimant's "ability to meet the physical, mental, sensory, and other requirements"

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do
most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include
(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching,
carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding,
carrying out, and remembering simple instructions; (4) use of judgment; (5) responding
appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes
in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at
141, 107 S. Ct. at 2291.

of the claimant's past relevant work.   20 C.F.R.  §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).   RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *See Walls*, 296 F.3d at 290; 20 C.F.R.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

# V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  *Hancock*, 667 F.3d at 472.  Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erred by failing to consider properly Listing 1.04 found in 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.  Pl.'s Mem. Supp. Mot. Summ J. 1, 14-23, ECF No. 15-1.  She also maintains that the ALJ failed to consider and weigh sufficiently the opinion of Mr. Soule.  *Id.* at 23-28.

**A.     ALJ's Step-Three Determination Regarding Listing 1.04**

Plaintiff asserts that she "established a prima facie case that [Listing 1.04] was met" because she suffers from nerve root compression, a loss of range of motion, and sensory loss.  *Id.* at 18.  "The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.'  A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'"  *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1.  "In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met."  *Huntington v. Apfel*, 101 F. Supp. 2d 384, 390 (D. Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)).  However, "[u]nder *Cook*, the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments."  *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999).  "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment."  *Id.*

Moreover, "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990). The claimant bears the burden of demonstrating that his impairment meets or equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986). "[T]he ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability." *Bruette v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-12-1972, 2013 WL 2181192, at *4 (D. Md. May 17, 2013) (citing 20 C.F.R. § 404.1527(d)(2); Social Security Ruling ("SSR") 96-5p).[5]

> Listing 1.04(A) provides:
>
> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by [1] neuro-anatomic distribution of pain, [2] limitation of motion of the spine, [3] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, [4] positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A). In other words, "motor loss . . . accompanied by sensory or reflex loss" is one of the four symptoms of nerve root compression under Listing 1.04(A). *See Radford*, 734 F.3d at 291, 293.

Here, Plaintiff does not point to any evidence of any motor loss accompanied by sensory or reflex loss. Rather, during the period between Plaintiff's alleged onset date of disability of

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

January 28, 2011, and the ALJ's decision on November 29, 2012, her medical records demonstrate that her motor function and sensation were intact, her motor strength was "5/5," her sensory perception was not impaired, she had no muscle weakness or numbness, her motor strength and tone were normal, she had no sensory deficits, and she had normal range of motion in her extremities.  R. at 374, 399, 434, 459, 462, 527, 530, 531, 534, 536, 553-54, 557, 677-78. Thus, contrary to Plaintiff's contention, substantial evidence demonstrates that her impairments did not meet or equal Listing 1.04(A).  *See Ketcher*, 68 F. Supp. 2d at 645; *see also Howard v. Astrue*, No. PWG-07-2365, 2009 WL 3100246, at *2 (D. Md. Sept. 22, 2009) ("In Subsection A, Listing 1.04 requires [a] 'limitation of motion of the spine, motor loss, and sensory or reflex loss.'  In this case, the medical documents of record—including those from Claimant's treating physician—indicate that she had good cervical and shoulder range of motion, normal motor strength and maintained intact sensory function and reflexes.  Therefore Claimant's argument that she meets Listing 1.04A is without merit." (citations omitted)).

Plaintiff also contends that the ALJ failed to develop the record and thus erred in finding that her impairments did not meet or equal Listing 1.04(C) because she could ambulate effectively (R. at 59).  Pl.'s Mem. Supp. Mot. Summ. J. 21-23, ECF No. 15-1.  "Inability to ambulate effectively" is defined as follows:

> b. *What We Mean by Inability To Ambulate Effectively*
>
> (1) *Definition*.  Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.  (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

14

    (2) *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b).

    As the Commissioner points out, substantial evidence in the record demonstrates that Plaintiff was able to ambulate effectively. The state agency medical consultants noted that Plaintiff's gait was normal without an assistive device and that her need for an assistive device was not well documented. R. at 135, 146, 395. Plaintiff was ambulatory in February 2011 (R. at 371-72, 666) and had a normal gait (R. at 416). In March 2011, Plaintiff reportedly used a cane, but her gait was normal. R. at 377-78. In July 2011, Plaintiff's gait was normal, she walked frequently, and she had no mobility limitations. R. at 399, 402. Plaintiff reported in September 2011 that she thought that she "may be able to take public transportation." R. at 433. In February 2012, Plaintiff reportedly used a cane (R. at 528), but she continued to walk frequently with no mobility limitations (R. at 462). Mr. Soule, Plaintiff's physician's assistant, noted in June 2012 that Plaintiff did not require an assistive device (R. at 550), although evidence in the record indicates that Plaintiff required a cane in April 2013 after the date of the ALJ's decision (R. at 15). Plaintiff's argument that the ALJ failed to develop the record thus is without merit because substantial evidence supports the ALJ's finding that Plaintiff was able to ambulate effectively. R. at 59.

Plaintiff asserts in her "Reply Brief" that Defendant's citations to the record providing substantial evidence that her impairments did not meet or equal Listing 1.04 amount to *post hoc* rationalization of the ALJ's decision.  Pl.'s Reply Br. 1-9, ECF No. 18.  "[I]f the decision 'is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time,'" however.  *Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam) (quoting *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (Posner, J.)).  Further, Plaintiff "has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of [her] disability claim."  *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).  Plaintiff's argument thus is unavailing.

**B.      ALJ's Consideration of Mr. Soule's Opinion**

As noted above, the ALJ gave "little weight" to the opinion of Mr. Soule, Plaintiff's physician assistant, because he was not an acceptable medical source and because his opinion was internally inconsistent and not supported by the medical evidence of record.  R. at 65. Plaintiff contends that the ALJ failed to evaluate Mr. Soule's opinion according to the factors set forth in SSR 06-03p, 2006 WL 2329939, at *4-5 (Aug. 9, 2006).  As discussed below, Plaintiff's assertion is unavailing.  *See Mason v. Astrue*, Civil No. JKS-10-2157, 2013 WL 990399, at *3 (D. Md. Mar. 12, 2013) ("Ms. Cira is not an 'acceptable medical source'; rather, therapists are 'other sources,' as defined in 20 C.F.R. 404.1513(d), and an ALJ, when analyzing opinions of such sources, *may*, but is not required to, use the factors set out in 20 C.F.R. 404.1527(d)." (citing SSR 06-03p)).

An ALJ's determination as to the weight to be assigned to an opinion "generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or

has failed to give a sufficient reason for the weight afforded a particular opinion[.]" *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (citation omitted).   Here, Plaintiff fails to demonstrate how the consideration of SSR 06-03p's factors supports Mr. Soule's opinion to which the ALJ gave little weight.   Rather, she contends that MRI evidence of her herniated discs and the results of a consultative examination in September 2011 are consistent with Mr. Soule's assessment.   Pl.'s Mem. Supp. Mot. Summ. J. 27-28, ECF No. 15-1.   However, although the consultative examiner opined that Plaintiff "has limitation of walking, sitting, and standing" (R. at 434), Plaintiff does not point to any of the examiner's findings that would support Mr. Soule's opinion that she would be absent from work more than four days per month as a result of her impairments or treatment (R. at 550).

Rather, substantial evidence supports the ALJ's finding that Mr. Soule's opinion, including his opinion that Plaintiff would be absent from work for more than four days per month, was not supported by the evidence of record.   The ALJ noted Plaintiff's history of conservative treatment (R. at 61) and his observations of Plaintiff at the hearing (R. at 60, 63), which the ALJ appropriately considered in determining her credibility regarding the intensity, persistence, and limiting effects of her symptoms.   *See Dunn*, 607 F. App'x at 273-75; *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).   The ALJ also found that Plaintiff did not experience any worsening of her condition around the time of her alleged onset date of disability.   R. at 61. Rather, the ALJ found that Plaintiff's "treatment and medication regimen generally remained constant throughout her longitudinal medical history, she exhibited only sporadic positive signs of significant pain, she rarely complained of problems related to her asthma, and no treating acceptable medical source imposed significant restrictions on her ability to perform work-related

functions." R. at 61. Moreover, in July 2012, a month after Mr. Soule rendered his opinion, Plaintiff's physical examination was normal. R. at 676-80.

Thus, in light of the foregoing, Plaintiff's argument that remand is warranted in this case because the ALJ did not indicate any rationale regarding the inconsistency of Mr. Soule's opinion to the record is unavailing. In any event, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999). "No principle of administrative law or common sense requires [the Court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (Posner, J.). Further, because Mr. Soule is not an acceptable medical source, his opinion can never be entitled to controlling weight. *Cf.* 20 C.F.R. §§ 404.1527(a)(2), (c)(2), 416.927(a)(2), (c)(2). Plaintiff's contention that remand is required because Mr. Soule's opinion, "if adopted, would result in a finding of 'disabled,'" thus is without merit. Pl.'s Mem. Supp. Mot. Summ. J. 25, ECF No. 15-1.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct

legal standards here.    Thus, Defendant's Motion for Summary Judgment is **GRANTED**,

Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is

**AFFIRMED**.[6]

**VII**

**Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 17) is

**GRANTED**.    Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**.    The

Commissioner's final decision is **AFFIRMED**.  A separate order shall issue.

Date: September 18, 2015                                         _____/s/_____

                                                                                 Thomas M. DiGirolamo
                                                                                 United States Magistrate Judge

---

[6] The ALJ's finding in his decision that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment" (R. at 63) "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'"  *Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (Posner, J.)).  Rather, the ALJ should compare the claimant's alleged functional limitations from pain to the other evidence in the record, not to the claimant's RFC.  *See id.*  "[A] claimant's pain and residual functional capacity are not separate assessments to be compared with each other.  Rather, an ALJ is required to consider a claimant's pain as part of his analysis of residual functional capacity."  *Id.*  In this case, however, the ALJ's use of the problematic boilerplate language does not require remand because the ALJ "properly analyzed [Plaintiff's] credibility elsewhere" and explained "how he decided which of [Plaintiff's] statements to believe and which to discredit" (R. at 60-63).  *Id.* at 639, 640; *see, e.g.*, *Sevens v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-1900, 2015 WL 2402821, at *2 (D. Md. May 19, 2015).